# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 12-CR-10134-NMG |
| v. ) | VIOLATIONS: |
| ) | |
| JEAN EXUME, ) | 18 U.S.C. §§ 1343, 2 (Wire Fraud) |
| ) | 18 U.S.C. §§ 1028A (Aggravated Identity |
| Defendant. ) | Theft) |
| ) | 18 U.S.C. § 981 (Criminal Forfeiture) |
| ) | 28 U.S.C. § 2461 (Criminal Forfeiture) |

## AFFIDAVIT OF STEVEN BLAIR

I, Steven Blair, do hereby state as follows:

1. I am a Detective with the Boston Police Department. I have been employed by the Boston Police Department for approximately thirty years, and have been a Detective for approximately twenty-four of those years. As part of my responsibilities, I am assigned to the Postal Financial Crimes Task Force (previously the Postal Identity Theft Task Force), which is tasked with investigating identity fraud and financial crimes.

2. In 2011, I was participating in an investigation involving the fraudulent use of replacement Bank of America debit cards to, among other things, purchase postal money orders at various post offices in the Boston metropolitan area. These replacement debit cards accessed the accounts of real Bank of America account-holders.

3. As of May 2011, based on my investigation, I had formed probable cause to believe that Jean Exume had been using such replacement Bank of America debit cards (issued in the names of real Bank of America account-holders) and, in doing so, had assumed individuals' identities, in order to purchase postal money orders at various post offices in the Boston metropolitan area. I also had probable cause to believe that

Exume was cashing fraudulently-obtained postal money orders at various post offices in the Boston metropolitan area.

4. As of May 2011, based on my investigation, I had identified the post offices in Roxbury, Massachusetts and Codman Square, Dorchester Center, Massachusetts, as post offices frequented by Exume when he sought to purchase and/or cash fraudulently obtained postal money orders.

5. On or about May 25, 2011, I had asked postal employees at the Roxbury, Massachusetts post office to contact me on my cellular telephone if they should encounter Exume attempting to purchase and/or cash a postal money order, and provided them a picture of Exume.

6. On May 25, 2011, I was conducting intermittent surveillance at both the Roxbury and Codman Square post offices in order to see if Exume would enter one of them to purchase and/or cash fraudulently obtained postal money orders.

7. At approximately 2:19 PM on May 25, 2011, while I was conducting surveillance at Codman Square, I received a telephone call from a postal employee at the Roxbury post office informing me that the individual whom I had asked about was in the post office and attempting to cash a postal money order. I asked the postal employee to stall the individual, and also asked for a description of the suspect's clothes. I then requested for any units in the area to proceed to the Roxbury post office and detain the suspect until I arrived.

8. I proceeded to the Roxbury post office, where uniformed officers had already arrived and were detaining Exume. At the time he was detained, Exume was in possession of, among other things, a Florida driver's license bearing Exume's picture but in the name of a Bank of America account-holder, as well as Bank of America debit and credit cards bearing the name of that same account-holder. Exume also had on his person a set of car keys.

9. I placed Exume under arrest, verbally providing him with his Miranda warnings. I asked Exume if he had his car with him, and he stated that he did not. I escorted him out of the Roxbury post office through the front door, which is on Malcolm X Boulevard, even though the formal address of the post office is 55 Roxbury Street.

10. From Malcolm X Boulevard, to the left of the front door of the post office, I observed Exume's car, a Nissan Maxima. The car was parked on Roxbury Street, on the left

side of the street, very close to the corner where Roxbury Street joins Malcolm X Boulevard. I recognized the vehicle as belonging to Exume because, due to previous surveillance and witness identification of the license plate of the car, which I had compared to RMV registration records, I was already aware of the make, model, and license plate information of his car.

11. Exume's car was parked illegally on Roxbury Street, as stated in a sign establishing the area in which he was parked as a tow-away zone in which no standing was allowed at any time. Additionally, the car's location had the potential to create an obstacle for motorists turning onto Roxbury Street from Malcolm X Boulevard.

12. At the time of his arrest, Exume appeared to be alone. At no time did Exume state that there was someone, such as a family member, who could take immediate possession of his vehicle. Therefore, the car was going to be left unattended, in a relatively high-crime area, unless it was towed.

13. Having observed the car, I called for a Boston Police marked vehicle to come to the scene to issue a citation, and also contacted the Boston Police Area B police station, which was the closest to the scene, to request that a tow truck be called.

14. Using the keys I had retrieved from Exume's person, I entered the vehicle and conducted an inventory search, in accordance with the Boston Police Department's Motor Vehicle Inventory Search Policy. Among other things, I found a cellular telephone from the center console of the vehicle, which I later returned to Exume at the police station; and an open Federal Express envelope in the uncovered pocket attached to the driver's side door. The envelope contained, among other things, thirteen uncashed postal money orders with a total value of $9,425. Later investigation revealed that these postal money orders had been purchased through the fraudulent use of a replacement Bank of America debit card.

15. After I had completed my inventory search of the vehicle and the citation had been issued, Exume's car was towed by a private company that does contract towing work for the Boston Police Department, whose name I believe to be K & C Towing.

16. I then proceeded to the Area B police station, where I completed a written inventory report. Exume was also booked at that station. The booking documents list the location of the arrest as Dudley and Warren Street in Roxbury. Similarly, the inventory report lists the location of the vehicle as Warren Street. These were listed as approximate locations, which are two blocks away from the actual location of both

the arrest and the search of Exume's vehicle, which, as described above, occurred on Malcolm X Boulevard and Roxbury Street, respectively.

I hereby certify that the foregoing is true and correct to the best of my knowledge. Signed and executed this 25th day of June 2013, under the pains and penalties of perjury.

Steven Blair
Detective
Boston Police Department