United States District Court
District of Massachusetts

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
        v.                    )
                              )   Criminal No.
JEAN EXUME,                   )   12-10134-NMG
                              )
        Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant is charged with committing wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A.  Pending before the Court is defendant's motion to suppress evidence obtained during a warrantless search of his vehicle following his arrest.

**I.   Background**

   **A.   Defendant's Arrest and Search of his Vehicle**

On or about May 25, 2011, defendant Jean Exume was arrested by Boston Police Department Detective Steven Blair while defendant was waiting to cash money orders at the United States Post Office in Roxbury, Massachusetts.  As the result of an investigation conducted during that year, Detective Blair suspected defendant had been assuming the identity of several individuals in order to obtain reissued debit cards from Bank of

America and use them to purchase postal money orders. At the time of his arrest, defendant possessed a Florida driver's license bearing his photo and debit card in the name of a Bank of America account holder. He also possessed a set of car keys, although he denied having driven to the post office.

While escorting defendant out of the Post Office, Detective Blair identified defendant's vehicle illegally parked on an adjoining street. Detective Blair recognized the vehicle based upon prior surveillance he had conducted of defendant. The vehicle was parked very close to an intersection with a busy boulevard, near a sign indicating a tow-away zone in which no standing was allowed at any time. After observing the car, Detective Blair called a local police station and requested that the car be ticketed and towed. Using the keys obtained from defendant's person, Detective Blair then entered the car and searched it, discovering, among other items, an open envelope containing 13 uncashed postal money orders with a total value of $9,425. The car was subsequently ticketed and towed and Detective Blair completed a written inventory report.

B.  **The Inventory Search Policy**

The Boston Police Department maintains a Motor Vehicle Inventory Search Policy ("the Inventory Search Policy") that instructs officers on when and how to dispose of a motor vehicle when the owner is unavailable (such as when the owner is then

under arrest).  If there is a "low probability of vandalism" to the vehicle and there is a person with "apparent authority" to assume control of it, the officer should leave the car in that person's custody.  If not, the officer should "secure" the car by either (1) leaving it legally parked, with the windows closed and the doors locked, or (2) having it towed for safekeeping.  The Policy explains that the vehicle should be towed for safekeeping when there is

> a danger to public safety; a danger to the vehicle being left unattended; a danger of theft or vandalism; or the possibility of false claims exists.

Any time that the vehicle is "secured," the securing officer must conduct an inventory search of its contents.  In the event that officer determines that the vehicle will be towed, the Inventory Search Policy directs him to conduct the inventory search of the vehicle prior to its removal "when circumstances and conditions permit."  The Policy specifically advises that an inventory search is not a search for evidence and should be conducted in order to protect the owner's property, prevent false claims and protect the public from dangerous articles left unattended.

When conducting the inventory, the officer should examine "any place in the passenger compartment that could contain valuable property," excluding any locked containers or areas for which the officer does not possess a key.  The Policy also

directs officers to examine the interior and exterior of the vehicle and to record any damage observed.

## II. Analysis

Defendant now moves to suppress the fruits of the warrantless search of his automobile. Although framed as a challenge to Detective Blair's purported inventory search of the vehicle, defendant focuses on the decision to impound his vehicle, claiming that (1) it was investigatory in nature and (2) the Inventory Search Policy does not provide "meaningful standard procedures" such that impoundments (and the subsequent searches) conducted pursuant to it do not satisfy the governing case law.

### A. Hearing

As an initial matter, the Court declines to hold an evidentiary hearing because defendant has failed to make a "sufficient threshold showing" that material facts are in dispute which cannot reliably be resolved on the paper record and which would entitle defendant to the requested relief if resolved in his favor. See United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) (citations omitted); see also United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010). In order to obtain an evidentiary hearing, a defendant must "allege facts sufficiently definite, specific, detailed, and nonconjectural" from which the Court may conclude that a substantial claim is presented. Brown, 621 F.3d at 57 (citation omitted).

Defendant principally challenges the breadth of discretion entrusted to police officers under the terms of the Inventory Search Policy. He does not challenge Detective Blair's account of the search or the subject car's location, except to complain that the Detective failed to indicate in his police report whether the car was parked in a "tow away" zone rather than a "no parking" zone (information which Detective Blair has since supplied in a sworn affidavit). In fact, defendant declined to provide an affidavit attesting to a different version of the arrest and search. Such a claim hardly controverts the facts asserted, much less alleges any facts "sufficiently definite, specific, detailed, and nonconjectural" to merit an evidentiary hearing. In ruling on the motion to suppress, the Court, therefore, looks only to the statements made in Detective Blair's affidavit and the exhibits submitted by defendant.

### B. Impoundments and Inventory Searches

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080-81 (2011). A warrantless search is per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). A warrantless seizure must also

satisfy Fourth Amendment scrutiny. See, e.g. Soldal v. Cook Cnty., Ill., 506 U.S. 56 (1992).

The decision by police to impound (i.e. seize) a motor vehicle and the decision to subject that vehicle to a search incident to the impoundment thus present two "analytically distinct" questions. United States v. Sanchez, 612 F.3d 1, 4 (1st Cir. 2010) (citing United States v. Duguay, 93 F.3d 346, 351 (7th Cir. 1996)). Although ordinarily law enforcement may only seize property pursuant to a warrant, the so-called "community caretaking exception" permits police to seize and remove vehicles that impede traffic or threaten public safety and convenience. United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006) (citing Opperman, 428 U.S. at 368-69). Impoundment decisions made pursuant to standardized procedures "will most likely, although not necessarily always, satisfy the Fourth Amendment." Id. at 238 (interpreting Colorado v. Bertine, 479 U.S. 367, 375 (1987) and citing cases). Impoundments made in the absence of standardized procedures may be upheld if conducted pursuant to the community caretaking exception and done reasonably under the circumstances. See id. at 238-39 (citations omitted).

An inventory search of a motor vehicle constitutes an exception to the Fourth Amendment warrant requirement. Bertine, 479 U.S. at 371; South Dakota v. Opperman, 428 U.S. 364, 372 (1976). In a typical example, the police impound a vehicle and

search its contents in order to "inventory" them. See, e.g. Opperman, 428 U.S. at 365-67 (describing facts). Such an inventory search does not implicate Fourth Amendment concerns because it is conducted for non-investigative purposes, such as to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property and to guard the police from danger. See Bertine, 479 U.S. at 372 (explaining holding of Opperman and deference accorded to police "caretaking procedures").

Inventory searches must, however, be "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Bertine, 479 U.S. at 375; see also United States v. Richardson, 515 F.3d 74, 85 (1st Cir. 2008) (noting warrantless inventory search permitted if carried out pursuant to standardized policy). The subjective intent of the officers is not relevant so long as they conduct a search according to a standardized inventory policy. United States v. Hawkins, 279 F.3d 83, 86 (1st Cir. 2002) (citing Bertine, 479 U.S. 367 at 373).

### C.  Application

Detective Blair's decision to impound defendant's vehicle comported with the Inventory Search Policy. Defendant was alone at the time of his arrest, denied that the vehicle belonged to him and never suggested that he was with someone who could take

possession of his vehicle. Once Detective Blair correctly identified the vehicle, therefore, he knew it would be left unattended and, under the Inventory Search Policy, had to be "secured." His decision to have the vehicle towed, rather than to leave it parked and locked, implemented at least two of the factors identified by the Policy as reasons favoring impoundment. First, the vehicle was illegally parked in a tow-away zone close to an intersection and presented an obstacle to motorists attempting to turn on to a busy street thereby creating a "danger to public safety." Second, the fact that the vehicle would have been left unattended on a city street presented a danger of "theft or vandalism."

The provisions of the Policy with respect to the impoundment of vehicles, unsurprisingly, coincide with valid, community caretaking purposes identified by courts that authorize police officers to have vehicles towed. Thus the location of defendant's vehicle not only created a "danger to public safety" under the Policy, it also impeded the flow of traffic and threatened "public safety and convenience." See Coccia, 446 F.3d at 238. Likewise, the police may lawfully impound a vehicle in order to protect it from theft or vandalism when it would otherwise remain on the side of a public highway or city street. See United States v. Ramos-Morales, 981 F.2d 625, 626 (1st Cir. 1992) (collecting cases). Detective Blair's decision to impound

defendant's vehicle was, therefore, rendered both pursuant to standardized procedures and in furtherance of purposes within the community care-taking exception.

The search of defendant's vehicle was also conducted pursuant to standard procedures and for a purpose other than the suspicion of criminal activity.  By conducting an inventory of defendant's vehicle after he requested its impoundment but before it was removed, Detective Blair adhered to the directives within the Inventory Search Policy to search a vehicle for valuables whenever it is "secured" and, where possible, to do so prior to its impoundment.  Furthermore, the scope of his search did not violate the Policy because the subject postal money orders were found inside an open container in the passenger compartment without the forcing of any closed containers.  Finally, he recorded the discovered contents on a police inventory form and noted having done so in his police report.

Although Detective Blair apparently neglected to record any damage to the car, as required by the Policy, that unintentional oversight does not disturb the Court's conclusion that Detective Blair searched defendant's vehicle in accordance with established police procedures.  Defendant's claim that the inventory search was conducted to uncover evidence of a crime is, therefore, without merit. See Hawkins, 279 F.3d at 86 (rejecting claim that otherwise valid inventory was "ruse" used to search for drugs).

The Court concludes that, because Detective Blair's decision to impound defendant's vehicle was rendered both pursuant to the Inventory Search Policy and for a valid community care-taking purpose, it did not violate defendant's Fourth Amendment rights. Likewise, the inventory search incident to the impoundment was not extra-constitutional because it was mandated by the same policy and conformed with policy requirements.

Defendant's opposing argument, that the Inventory Search Policy fails to provide "meaningful standardized procedures" and should be deemed invalid in its entirety, is unavailing. Defendant has cited no authority supporting his claim that otherwise standardized procedures governing inventory searches and impoundments must also be "meaningful."  Rather, the district judge who coined that phrase invalidated the subject search because the police procedures in that case failed to inform the decision to impound a vehicle. See United States v. Donnelly, 885 F. Supp. 300, 306 (D. Mass. 1995) (finding that police policy governed what to do with an impounded vehicle rather than "the circumstances under which it should be impounded").  The First Circuit has since found that even impoundments made in the absence of standardized procedures may be upheld if conducted pursuant to the community caretaking exception and the impoundment was reasonable under the circumstances. See Coccia, 446 F.3d at 238-39.

Whatever persuasive authority <u>Donnelly</u> retains following the decision of the First Circuit in <u>Coccia</u>, it does not apply here because its facts are clearly inapposite.  In the <u>Donnelly</u> case, the arresting police officer placed Donnelly under arrest, searched his vehicle and located a gun in the glove compartment. <u>Id.</u> at 304.  He then recorded the license plate number of the vehicle and authorized it to be towed. <u>Id.</u>  The District Judge found that the police department's towing policy, at least as understood by the arresting officer, seemed to make the impoundment "contingent on the kind of crime for which the person is arrested" rather than for acceptable purposes within the community care-taking exception. <u>See</u> <u>id.</u> at 306-307.

By contrast, the Inventory Search Policy at issue here instructs officers to impound vehicles based upon acceptable community care-taking purposes, such as public safety and a danger of theft or vandalism.  Moreover, Detective Blair authorized the vehicle's impoundment without regard to its contents and based upon the fact that it was illegally parked and would be otherwise unattended.

Accordingly, the impoundment and inventory search of defendant's vehicle were both conducted pursuant to standardized protocols and for purposes other than the investigation of criminal activity.  Defendant's motion to suppress evidence obtained from his vehicle will be denied.

**ORDER**

In accordance with the foregoing, defendant's motion to suppress (Docket No. 58) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 11, 2013